(No. 2844—)

ZELMA RUBY PARISH, Claimant, *vs.* STATE OF ILLINOIS, Respondent.

*Opinion filed October 8, 1940.*

CHARLES G. SEIDEL, for claimant.

JOHN E. CASSIDY, Attorney General; GLENN A. TREVOR, Assistant Attorney General, for respondent.

MR. JUSTICE YANTIS delivered the opinion of the court:

Claimant's Statement, Brief and Argument in this cause was not filed until August 29, 1940, but the claim was filed February 15, 1936. It is represented therein that claimant was employed at the Elgin State Hospital as an attendant; that in the course of her employment on or about January 31, 1935, while attempting to prevent one Edith Woods, a patient at such institution, from escaping, claimant had her left knee pushed against a door jamb, thereby spraining her knee and dislocating the knee cap. The evidence discloses that Mrs. Kerley, a supervisor at the institution, was called. The latter sent claimant to the hospital at the institution, where her knee was examined by Dr. Wiltrakis of the institution staff. The patient's knee was bandaged and she was sent back to work. She received infra red light treatments for two and one-half weeks and her knee was bandaged for about ten weeks, under the care of Dr. Wiltrakis, after which the patient was given an elastic bandage to wear. The patient continued in her regular occupation. On October 28, 1935, she was employed in evening duty in a ward on the first floor of the building known as B-1 North. Claimant testifies that,

"After we had completed our work we were supposed to amuse the patients. I was dancing with a patient named Ruby Donald. I started to turn around when my knee cap slipped and I fell. I told the supervisor and Dr. Wiltrakis. The next day I reported to the hospital and the doctor put a splint on my knee, which I kept on until the 2nd of December, 1935. I continued to attend to all my duties until December 29, 1935. Three times during the morning of that day my leg just folded up. As soon as I got off duty I reported to Dr. Wiltrakis and remained in bed for two weeks from December 29th to January 12, 1936."

Claimant stated that she was put on the sick list for about two weeks, and then she and her husband left on their vacation. She received her pay for December and twenty-eight (28) days in January, then she was paid for twelve (12) days in February and for two (2) days in March, all on the basis of Fifty-four ($54.00) Dollars per month. She further received her maintenance allowance at the institution until April 18th. She reported back for duty on March 2nd or 3rd, but was not accepted for work because of her statement that she would be unable to climb stairs. She was requested by Dr. Reed of the institution staff, on or about March 10, 1936, to sign a six months' leave of absence. She stated she was ready to go back to work if she didn't have to climb stairs. She declined to sign the leave of absence blank and has not been employed at the institution since that time.

Claimant testified that in March, 1936, she could have gone back to work if they had assigned her to duties on the ground floor so she would not have to climb stairs any more than necessary; that she was able to work from and after July, 1936 (Tr. p. 7).

Claimant further testified that, "In July, 1936, Miss Leonard (of the institution staff) again sent the leave of absence blank to me to sign. I told her I was ready to go back to work." When asked, "Were you ready for unqualified service?" claimant replied: "Outside of the violent wards I could have gone ahead. The greater part of my work had been on the first floor in the main building." She found new employment from January 4, 1937, at a garment factory. At the time of the accident claimant was married, but had no children. Claimant was first employed at the institution December 16, 1934. Her first accident occurred January 31,

1935. Those similarly employed received pay covering the first year of their employment at the rate of Forty-five ($45.00) Dollars for six months and Fifty-two ($52.00) Dollars the following six months, plus maintenance, as in her case, of Eighteen ($18.00) Dollars per month (Tr. p. 10), which would make Seven Hundred Ninety-eight ($798.00) Dollars annual earnings, or an average weekly wage of Fifteen and 35/100 ($15.35) Dollars, or a weekly compensation rate of Seven and 67/100 ($7.67) Dollars.

We have previously held that temporary total disability need not follow immediately after the accident in order to justify an award for later disability. In this case the first accident occurred January 31, 1935. She lost no time from her regular occupation until after October 28, 1935, when she had a further accident. Claimant was not off active duty until December 29, 1935, a period of two months. The record shows she was then absent from work and remained in the hospital infirmary for a period of two weeks until January 12, 1936. She was paid for the balance of December and for twenty-eight (28) days in January for non-productive time and further for twelve (12) days in February and two (2) days in March for non-productive time; all of such non-productive time payments being on the basis of Fifty-four ($54.00) Dollars per month. According to claimant's testimony, she could have returned to work and performed all the duties required of her in the ward where she was accustomed to work, after January 1, 1936. It further appears (Tr. p. 18) that from her own statements she would have been able to return to unqualified service except in a violent ward on July 18, 1936. At another time, as above noted, she testified that she could have performed her duties in general after the first of January, 1937.

From a consideration of the entire record the court finds: That claimant herein and respondent are shown to be within the purview of the Workmen's Compensation Act; that claimant suffered an accident which arose out of and in the course of her employment and thereby sustained accidental injuries, resulting in temporary total disability; that such temporary total disability extended from December 29, 1935, to July 18, 1936. From such period is to be deducted the two weeks in the latter part of February and the forepart of March for which claimant received her regular wages dur-

ing a vacation period. This leaves a balance of twenty-seven (27) weeks for which temporary total disability is due at the rate of Seven and 67/100 ($7.67) Dollars per week, or Two Hundred Seven and 09/100 ($207.09) Dollars. There should be deducted, however, from the latter amount the over payment made to her for non-productive time for the period from December 28th to January 28, 1935, or thirty (30) days, during which she received pay at the rate of Fifty-four ($54.00) Dollars per month. Such computation leaves as the amount due claimant for an award herein the sum of One Hundred Fifty-three and 09/100 ($153.09) Dollars.

An award is therefore hereby made in favor of claimant, Zelma Ruby Parish, for temporary total disability in the sum of One Hundred Fifty-three and 09/100 ($153.09) Dollars. As the full amount has heretofore accrued, same is payable instanter.

This award, being subject to the provisions of an Act entitled "An Act making an Appropriation to Pay Compensation Claims of State Employees and providing for the Method of Payment Thereof" (Ill. Revised Statutes, 1939, Bar Association Edition, Chapter 127, Pars. 180-181), and being subject also to the terms of an Act entitled "An Act making Appropriations to the Auditor of Public Accounts for the Disbursement of Certain Monies until the Expiration of the First Fiscal Quarter after the Adjournment of the next Regular Session of the General Assembly," approved July 1, 1939 (Session Laws 1939, page 117); and being, by the terms of the first mentioned Act, subject to the approval of the Governor, is hereby, if and when approval is given, made payable from the appropriation from the General Revenue Fund in the manner provided by the foregoing Acts.